IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAUREYNN M. ELIE,             ) | |
|                               ) | DEMAND FOR JURY TRIAL |
|   **Plaintiff,**              ) | |
|                               ) | Civil Action File No. |
| v.                            ) | 1:15-cv-03916-MHC |
|                               ) | |
| AMF HOLDINGS, LLC             ) | |
| WHITE GLASS LENDING, LLC,     ) | |
| KEITH CRANDALL, and           ) | |
| ACLAIME CREDIT PARTNERS, LLC  ) | |
|                               ) | |
|   **Defendants.**             ) | |
|                               ) | |

## AMENDED COMPLAINT

Plaintiff Laureynn M. Elie ("Plaintiff"), by her undersigned attorney, and for her Amended Complaint against the captioned Defendants, AMF Holdings, LLC ("AMF"), White Glass Lending, LLC ("White Glass"), Keith Crandall ("Defendant Crandall"), and Aclaime Credit Partners, LLC ("Aclaime") (collectively, "Defendants"), hereby aver as follows:

## NATURE OF THIS ACTION

1.  This is a civil action arising in part under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), as referenced in 15 U.S.C.A. § 1601, the Truth-in-Lending Act ("TILA"), and as referenced in 15 U.S.C.A. §

1639, the Home Ownership and Equity Protection Act ("HOEPA").  Additionally, this civil action arises in part under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Georgia Fair Lending Act of 2002, O.C.G.A. § 7-6A-1, *et seq.*, and RESPA 12 U.S.C. § 2601 *et seq.*, as it relates to a loan transaction with patently unfair, and predatory lending terms and omitted disclosures, secured by a dwelling, as set forth more fully below.

## PARTIES

2. Plaintiff Laureynn M. Elie is a consumer, as defined under 15 U.S.C. § 1602(h).

3. Plaintiff is an individual over the age of eighteen.

4. Plaintiff is a citizen of the state of Georgia, and has a permanent residence, and at all times residing in the State of Georgia, at ███████████ ████, in the city of Fairburn, Fulton County.

5. Defendant AMF Holdings, LLC ("AMF"), is a creditor as that term is defined under 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17), and at all times relevant hereto was regularly engaged in the business of extending consumer credit for which a finance charge is or may be imposed and is payable more than four installments by written agreement.  AMF is a limited liability corporation.

6. On information and belief, AMF's members are all citizens of the State of Utah. Further, on information and belief, AMF's principal place of business is in Sandy, Utah. AMF does, however, conduct business in the State of Georgia. Despite conducting business in this state, AMF has not registered with the Georgia Secretary of State, nor with the Georgia Department of Banking and Finance, and upon information and belief, has not qualified to do business in this State.

7. Defendant White Glass Lending, LLC ("White Glass Lending"), is a creditor as that term is defined under 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17), and at all times relevant hereto was regularly engaged in the business of extending consumer credit for which a finance charge is or may be imposed and is payable more than four installments by written agreement. White Glass Lending is a limited liability corporation.

8. On information and belief, White Glass Lending's members are citizens of the state of Utah.

9. Further, on information and belief, White Glass Lending has its principal place of business in Sandy, Utah, but does business in the State of Georgia. However, White Glass Lending has not registered with the Georgia Secretary of State, nor with the Georgia Department of Banking and Finance and upon information and belief, has not qualified to do business in the State of Georgia.

10. Defendant Aclaime Credit Partners, LLC ("Aclaime"), is a creditor as that term is defined under 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17), and at all times relevant hereto was regularly engaged in the business of extending consumer credit for which a finance charge is or may be imposed and is payable more than four installments by written agreement.  Aclaime is a limited liability corporation, and upon information and belief is the parent company of White Glass Lending and AMF Holdings.

11. On information and belief, Aclaime's members are citizens of the State of Utah.  Aclaime has its principal place of business in Sandy, Utah, but does business in the State of Georgia.  However, Aclaime has not registered with the Georgia Secretary of State, nor with the Georgia Department of Banking and Finance and upon information and belief, has not qualified to do business in the State of Georgia.

12. Defendant Keith Crandall, ("Defendant Crandall") is a creditor as that term is defined under 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17), and at all times relevant hereto was regularly engaged in the business of extending consumer credit for which a finance charge is or may be imposed and is payable more than four installments by written agreement.  Defendant Crandall is an individual, who resides in and is a citizen of Utah.

## JURISDICTION

13. These claims arise under federal law, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), as referenced in 15 U.S.C.A. § 1601, *et seq.*, the Truth-in-Lending Act ("TILA"), and as referenced in 15 U.S.C.A. § 1639, *et seq.*, the Home Ownership and Equity Protection Act ("HOEPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

14. Additionally, this Court has jurisdiction in this proceeding pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties, and the amount of controversy exceeds $75,000.00, exclusive of interest and costs.

15. Further, the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

16. Last, this Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

17.     This Court has personal jurisdiction over Defendants by virtue of consent, as they do business within the State of Georgia and within this Judicial District.

## VENUE

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as the real property in this case is situated in this judicial district, a substantial part of the events and claims that are the subject of this suit occurred here, and because purported contract giving rise to this action was executed and performed in Fulton County, Georgia.

## FACTUAL BACKGROUND

1.     Plaintiff resided at 9002 Cedar Grove Road, Fairburn, Georgia 30213 (hereinafter "childhood home" or "Plaintiff's family home"), a single family home, with her mother, step-father, and two younger brothers since it was built in or around 2003.

2.     On or around September 2013, Plaintiff received her childhood home (9002 Cedar Grove Road, Fairburn, Georgia 30213), as an advancement of her inheritance from her mother, by way of quitclaim deed.

3.  Plaintiff has at all times, including today, considered 9002 Cedar Grove Road, Fairburn Georgia 30213 to be her permanent place of residence.

4.  Plaintiff has at all relevant times received her mail at 9002 Cedar Grove Road, Fairburn Georgia 30213.

5.  In or around January 2014, a pipe burst in Plaintiff's family home, causing major damage to the basement.

6.  Plaintiff, as the owner of the home, sought out a consumer loan to assist her family in making repairs to the home after the pipe burst, which included the water-damaged basement, as the same was threatening the loss of the home to mold.

7.  Plaintiff is of minority descent, and at or around the time Plaintiff sought out the consumer loan, Plaintiff was a twenty-one (21) year old, college student.

8.  Plaintiff's only employment around the time she sought out a loan was in a local area mall.

9.  Plaintiff never purchased real estate before.

10. Plaintiff never obtained a mortgage or borrowed money subject to a mortgage or home loan prior to April 2014.

7

11. At the time or around the time of the loan application, Plaintiff barely had four thousand dollars ($4,000.00) in assets, outside of her family's home, which she was using as collateral to secure a mortgage.

12. Plaintiff had a credit score below the necessary credit score required to qualify for a conventional home loan.

13. On Plaintiff's April 2014 loan application ("loan application"), wherein she was seeking to obtain money to make repairs to her family's home, Plaintiff detailed her first-time borrower status, as she had not completed any "projects" in the last eighteen months, nor did she own any properties, outside of her family's home, which was quitclaimed to her as an advancement on her inheritance.

14. Plaintiff listed her monthly expenses as zero ("0"), as she was still dependent on her parents, who resided at 9002 Cedar Grove Road.

15. Plaintiff listed her birth year on the loan application, which disclosed her age to Defendants.

16. Plaintiff did not seek a business loan.

17. Plaintiff did not intend to use or seek the funds for any business purpose.

18.     Plaintiff sought a mortgage, a consumer loan, so that she could assist her family in making repairs to their home after a pipe burst causing water damage and threatened her family's safety in the home, due to mold hazards.

19.     Plaintiff's Loan Application listed consumer related purposes for seeking the loan.

20.     Specifically, Plaintiff listed that she sought a loan to "renovate *my* home," to "pay tuition," "computer," and to fund her graduate school education, including replace her car with estimated costs of 15,000.00.[1]

21.     The application that Plaintiff submitted asked how many properties that Plaintiff owned.  Plaintiff filled in the blank with the number "one."  That one property that Plaintiff listed, and that she was referring to was her family's home; the home that she received as an advancement on her inheritance.  At the time of the Loan Application, Plaintiff still resided at the home with her family.

22.     The Loan Application asked Plaintiff about the "total # of projects" that she had "completed in the past 18 months."  Plaintiff answered the question by placing a "0" on the line.

---

[1] See April 29, 2014 Loan Application ("Renovate my home, which will include repairs to the lower basement level from the burst pipe, the cost is estimated at 6500,00,[sic] the renovation of the property will include landscaping, hardscape, repairing the rear deck to seal and repair lower level underdecking system, interior, exterior painting of the home est. cost 40-50k, pay tuition cost of 8,500, books cost 1,000 computer cost 2,000, replace my car est cost 15,000. I also plan to set aside funds for law school approx. 150k.").

23. The Loan Application asked Plaintiff "how long [she had] been investing." On the line following the question, Plaintiff put "n/a."

24. Plaintiff listed her occupation as "resigned" from a retail store at the mall, and as a "fulltime student."

25. Plaintiff listed her total monetary assets as barely exceeding Four Thousand Dollars ($4,000.00).

26. On or around May 9, 2014, Plaintiff received a document from White Glass Lending approving a loan.

27. On or around May 16, 2014, Plaintiff signed some documents to enter into a transaction with Defendants AMF.

28. The loan was for approximately $510,000.00, with an interest rate of 13%, and more than $30,000.00 going to the loan originator (broker) and the lender (AMF).

29. Out of the $510,000.00, Plaintiff only received approximately $471,389.13.

30. However, on or around the same date, Plaintiff's electronic signature was affixed to a purported agreement and other related documents with Defendant AMF (the "Transaction").

31. Said documents were prepared and purportedly witnessed by the now, defunct, and bankrupt law firm Morris, Hardwick & Schneider (which was later reestablished as Morris, Schneider & Wittstadt after the allegations of embezzlement and fraud arose against attorneys at the firm, which included former partner Nathan Hardwick, IV. The allegations against the attorneys, specifically Nathan Hardwick, preceded his own federal indictment on fraud charges.)

32. The Transaction documents are all form documents, which were prepared solely by Defendants. Plaintiff had no input regarding the same.

33. Nonetheless, the Transaction documents make material statements that are patently false. Such statements include, but are not limited to:

   a. Plaintiff is a "professional real estate investor."

   b. Plaintiff "has not at any time, will not and has no intention of occupying the Property as a primary or secondary personal residence."

   c. "Financing is being used solely for the purpose of acquiring or refinancing of real property."

   d. Plaintiff "obtained the assistance of counsel" prior to engaging with Defendants.

    e. Plaintiff had the assistance of her own counsel in reviewing and executing the note.

    f. That the "meaning and effect" of such provisions were "fully explained to [Plaintiff]" by her independent counsel.

34. Plaintiff is not a corporation.

35. Plaintiff is not a real estate investor.

36. At all times material hereto, Defendants knew and/or should have known that Plaintiff was not operating as a corporation, nor did she own a business, nor was she doing business as a real estate investor.

37. Defendants knew or should have known that the subject property at issue was where Plaintiff and her immediate family resided and considered their principal place of residence, as they received Plaintiff's driver's license, state ID, and all listed her family's home address. Defendants also listed Plaintiff's home as her family's home address, 9002 Cedar Grove Road.

38. The documents purport to constitute a "commercial transaction," however, Plaintiff's dealings were not commercial in nature. To the contrary, Plaintiff's dealings represent a consumer based transaction, which is subject to the purview of TILA.

39. The documents purport to grant a lien and security interest in "all fixtures of every description and all accessories thereto located at Plaintiff's family home."

40. Plaintiff was not afforded a three day right of rescission concerning and/or regarding the documents and/or transaction as required by 15 U.S.C. § 1635.

41. Further, substantial portions of the "loan proceeds" were not distributed to and/or used for the benefit of Plaintiff. Irrespectively, Plaintiff has been charged and paid exorbitant interest on the entire Principal Loan Amount.

42. The transaction, to the extent the documents are enforceable at all, constitutes a consumer credit transaction with an effective interest rate for exceeding the "maximum annual interest rate" allowed by law.

43. The documents are unconscionable, fraudulent, endured by fraud, and/or void, voidable and/or void *ab initio* as a matter of law.

44. In connection with this alleged debt, Defendant Keith Crandall and others at his direction engaged in harassing phone calls and behavior to Plaintiff and her family, which were aimed to harass, bother, intimidate, annoy and threaten Plaintiff in order to collect the remaining balance on the mortgage.

45. Further, the Defendants' National Mortgage Licensing System (NMLS) number is not listed on the loan documents.

46. Defendants are not registered in the State of Georgia as mortgage lenders or as a corporate entities doing business in this state.

## COUNT I AND II:  TRUTH IN LENDING ACT AND GEORGIA FAIR LENDING ACT VIOLATIONS

47. Plaintiff incorporates the allegations in paragraphs 1 through 44 above, as if fully set forth herein.

48. Plaintiff obtained the loan for a personal, family and a household use purpose.

49. The loan was a consumer credit extended by a creditor.

50. The loan is secured by real property, Plaintiff's family home, which is 9002 Cedar Grove Road, Fairburn, Georgia.

51. Defendants failed to disclose the interest rate exceeding the average prime rate by more than 6.5%.

52. Defendants failed to disclose that the fees for the loan exceeded $20,000.00 and equated more than 5% of the lending amount

53. The loan constitutes a high cost home loan.

54. The loan calls for a balloon payment in violation of federal and state law. See § 1026.32(a)(1)(i).

55. Defendants, themselves, and by and through their loan originator attempted to refinance the high cost mortgage within the first year of the origination of the first loan, and the same was not in Plaintiff's best interest.

56. Defendants did not consider Plaintiff's ability to repay the loan, considering her credit, employment at the mall, and her available assets of only $4,000.00 outside of the collateral. See 1026.34(a)(4)

57. Defendants did not verify Plaintiff's current obligation, or her income, nor did they ask for Plaintiff's W-2's.

58. Defendants did not require Plaintiff to seek pre-loan counseling prior to approving the loan and disbursing the funds. See 1026.34(a)

59. Defendants failed to disclose certain language in conspicuous type size to Plaintiff, a consumer, as required by federal law.

60. The loan's late fee provisions violates federal regulations (1026.34(a)(8)), and the Georgia Fair Lending Act.

## COUNT III:  VIOLATIONS OF RESPA

61. Plaintiff incorporates the allegations in paragraphs 1 through 60 above, as if fully set forth herein.

62. Plaintiff made Qualified Written Requests to Defendants regarding this loan.

63. Defendants failed to provide the information.

64. Plaintiff seeks damages regarding the same.

## COUNT IV: FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS

65. Plaintiff incorporates the allegations in paragraphs 1 through 64 above, as if fully set forth herein.

66. Defendants and/or their agents made calls, threats, and took adverse actions regarding the repayment of this debt in violation of the Fair Debt Collection Practices Act.

67. Such actions included calls to Plaintiff's home, and engaging in discussions about the debt to third parties, without her authorization, and continuing collections efforts despite being told to cease and desist.

## DEMAND FOR JURY TRIAL

68. Plaintiff hereby demands a jury trial of all issues in the above-captioned action which are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

(a)  A judgment declaring:

1. the lending documents at issue void, voidable and/or void *ab initio* as a matter of law;

2. any security interest and/or purported security interest maintained and/or claimed to be maintained in any real, personal and/or intangible property of Plaintiff's, separately and/or severally, void, voidable and/or void *ab initio*;

3. that Defendants are enjoined from continuing collection efforts and/or otherwise harassing, bothering, annoying and/or contacting Plaintiff; and

4. that Plaintiff is entitled to compensatory and punitive damages for Defendants' negligence, wantonness, fraudulent and/or wrongful actions as set forth in her well-pleaded, Amended Complaint, and as to be proven at trial.

(b) A judgment awarding actual damages and statutory damages against Defendants AMF Holdings, LLC (hereinafter "AMF"), White Glass Lending, LLC (hereinafter "White Glass Lending"), and Keith Crandall (hereinafter "Mr. Crandall"), (collectively referred to as "Defendants") for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"), Federal Reserve Board Regulation Z, 12 C.F.R. § 226, the Fair Debt Collection Practice Act 15 U.S.C. § 1692 *et seq.*, and the Georgia Fair Lending Act O.C.G.A. § 7-6A-1, *et seq*.

(c) An order awarding Plaintiff for the costs and expenses of this litigation, including attorney's fees; and

(d) Any such other and further relief for Plaintiff as this Court deems just and proper.

Dated:  April 22, 2016          Krystal M. Moore, LLC

By:   /s/  Krystal M. Moore
Krystal M. Moore
Georgia State Bar No. 452370
P.O. Box 55012
Atlanta, Georgia 30308
Tel:  (404) 423-4272
Fax:  (404) 506-9748
Email:  Krystal@attymoore.com

*Counsel for Plaintiff*

## **CERTIFICATION OF TYPEFACE COMPLIANCE**

Pursuant to LR 7.1(D), NDGa., counsel for Plaintiff hereby certifies that this Amended Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(C), NDGa.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREYNN M. ELIE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| v. | ) | 1:15-cv-03916-MHC |
| | ) | |
| AMF HOLDINGS, LLC and | ) | |
| WHITE GLASS LENDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing Amended Complaint with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing upon Counsel of Record.

Dated: April 22, 2016

                                           Krystal M. Moore, LLC

                      By:   /s/ Krystal M. Moore
                                           Krystal M. Moore
                                           Georgia State Bar No. 452370
                                           P.O. Box 55012
                                           Atlanta, Georgia 30308
                                           Tel: (404) 423-4272
                                           Fax: (404) 506-9748
                                           Email: Krystal@attymoore.com

                                                 *Counsel for Plaintiff*