## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREYNN MARIE ELIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action File No. |
| | ) | 1:15-CV-03916-MHC-CMS |
| AMF HOLDINGS, LLC, | ) | |
| WHITE GLASS LENDING, LLC, | ) | |
| KEITH CRANDALL, and | ) | |
| ACLAIME CREDIT PARTNERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| AMF HOLDINGS, LLC, | ) | |
| | ) | |
| Counterclaim Plaintiff and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LAUREYNN MARIE ELLIE, | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| MARIE C. GELIN and | ) | |
| PRENTICE L. FLOYD, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT, AND AMF'S COUNTERCLAIM AGAINST LAUREYNN M. ELIE AND THIRD-PARTY COMPLAINT AGAINST MARIE C. GELIN AND PRENTICE L. FLOYD

COMES NOW Defendants AMF Holdings, LLC ("AMF"), White Glass Lending, LLC ("White Glass"), Keith Crandall ("Crandall"), and Aclaime Credit Partners, LLC ("Aclaime") (collectively, "Defendants"), and file this their Answer and Defenses to Plaintiff's Amended Complaint, and COMES NOW Counterclaim Plaintiff and Third-Party Plaintiff AMF and files this its Counterclaim against Counterclaim Defendant Laureynn M. Elie ("Elie") and Third-Party Complaint against Third-Party Defendants Marie C. Gelin ("Gelin") and Prentice L. Floyd ("Floyd"), respectfully showing the Court as follows:

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Plaintiff's Amended Complaint is barred for insufficient process and for insufficient service of process as to Defendants Crandall and Aclaime.

### SECOND DEFENSE

The Plaintiff's Amended Complaint is barred for failure to state a claim upon which relief can be granted.

### THIRD DEFENSE

White Glass, Crandall and Aclaime have been misjoined and improperly named as defendants because they are not parties to the loan documents at issue.

SGR/13831677.2

## FOURTH DEFENSE

The Plaintiff's Amended Complaint is barred by estoppel.

## FIFTH DEFENSE

The Plaintiff's Amended Complaint is barred by Plaintiff's fraud.

## SIXTH DEFENSE

The Plaintiff's Amended Complaint is barred by laches.

## SEVENTH DEFENSE

The Plaintiff's Amended Complaint is barred by statute of limitations.

## EIGHTH DEFENSE

The Plaintiff's Amended Complaint is barred by waiver.

## NINTH DEFENSE

The Plaintiff's Amended Complaint is barred because it does not state with particularity the circumstances allegedly constituting fraud by the Defendants.

## TENTH DEFENSE

The Plaintiff's Amended Complaint is barred by ratification of the loan and loan documents, and by failure to tender and return the benefits received from the loan and loan documents.

–3–

ELEVENTH DEFENSE

**ANSWER**

Subject to and without waiver of the foregoing affirmative defenses,
Defendants answer and respond to each enumerated paragraph of the Plaintiff's
Amended Complaint as follows:

Nature of This Action

1.

Defendants deny the allegations contained in paragraph 1 of the Plaintiff's
Amended Complaint.

Parties

2.

Defendants deny the allegations contained in paragraph 2 of the Plaintiff's
Amended Complaint.

3.

Defendants admit the allegations contained in paragraph 3 of the Plaintiff's
Amended Complaint.

SGR/13831677.2

4.

Defendants admit that Plaintiff Elie is a citizen of the State of Georgia, but deny the remaining allegations contained in paragraph 4 of the Plaintiff's Amended Complaint.

5.

Defendants admit that AMF is a limited liability company, but deny the remaining allegations contained in paragraph 5 of the Plaintiff's Amended Complaint.

6.

Defendants admit that AMF's sole member is a citizen of the State of Utah, and that its principal place of business is in Sandy, Utah, but Defendants deny the remaining allegations contained in paragraph 6 of the Plaintiff's Amended Complaint.

7.

Defendants admit that White Glass is a limited liability company, but deny the remaining allegations contained in paragraph 7 of the Plaintiff's Amended Complaint.

SGR/13831677.2

8.

Defendants admit that White Glass' sole member is a citizen of the State of Utah.

9.

Defendants admit that White Glass has its principal place of business in Sandy, Utah, but Defendants deny the remaining allegations contained in paragraph 9 of the Plaintiff's Amended Complaint.

10.

Defendants admit that Aclaime is a limited liability company, but Defendants deny the remaining allegations contained in paragraph 10 of the Plaintiff's Amended Complaint.

11.

Defendants admit that Aclaime has its principal place of business in Sandy, Utah, but Defendants deny the remaining allegations contained in paragraph 11 of the Plaintiff's Amended Complaint.

12.

Defendants admit that Crandall is an individual who resides in and is a citizen of the State of Utah, but Defendants deny the remaining allegations

SGR/13831677.2

contained in paragraph 12 of the Plaintiff's Amended Complaint.

<u>Jurisdiction</u>

13.

Defendants deny the allegations contained in paragraph 13 of the Plaintiff's Amended Complaint.

14.

Defendants admit the allegations contained in paragraph 14 of the Plaintiff's Amended Complaint.

15.

Defendants deny the allegations contained in paragraph 15 of the Plaintiff's Amended Complaint.

16.

Defendants admit the allegations contained in paragraph 16 of the Plaintiff's Amended Complaint.

17.

Defendants admit the allegations contained in paragraph 17 of the Plaintiff's Amended Complaint.

SGR/13831677.2

<u>Venue</u>

18.

Defendants admit the allegations contained in paragraph 18 of the Plaintiff's Amended Complaint.

<u>Factual Background</u>

Second Paragraph 1.

Defendants deny the allegations contained in the second paragraph 1 of the Plaintiff's Amended Complaint.

Second Paragraph 2.

Defendants admit that the property located at 9002 Cedar Grove Road, Fairburn, Fulton County, Georgia 30213 ("Property") was transferred to Plaintiff Elie via a Quit Claim Deed dated September 10, 2013, from Gelin, as grantor, to Elie, as grantee, and witnessed by Floyd, which deed is recorded in Book 53118, Page 171, Records of Fulton County, Georgia, but Defendants deny all remaining allegations contained in the second paragraph 2 of the Plaintiff's Amended Complaint.

SGR/13831677.2

<center>Second Paragraph 3.</center>

Defendants deny the allegations contained in the second paragraph 3 of the Plaintiff's Amended Complaint.

<center>Second Paragraph 4.</center>

Defendants deny the allegations contained in the second paragraph 4 of the Plaintiff's Amended Complaint.

<center>Second Paragraph 5.</center>

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 5 of the Plaintiff's Amended Complaint, and therefore deny same.

<center>Second Paragraph 6.</center>

Defendants deny that Plaintiff sought out a consumer loan from Defendants, and Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in the second paragraph 6 of the Plaintiff's Amended Complaint, and therefore deny same.

<center>Second Paragraph 7.</center>

Defendants deny that Plaintiff sought out a consumer loan from Defendants, and Defendants lack knowledge or information sufficient to form a belief about the

<center>–9–</center>

truth of the remaining allegations contained in the second paragraph 7 of the Plaintiff's Amended Complaint, and therefore deny same.

### Second Paragraph 8.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 8 of the Plaintiff's Amended Complaint, and therefore deny same.

### Second Paragraph 9.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 9 of the Plaintiff's Amended Complaint, and therefore deny same.

### Second Paragraph 10.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 10 of the Plaintiff's Amended Complaint, and therefore deny same.

### Second Paragraph 11.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 11 of the Plaintiff's Amended Complaint, and therefore deny same.

SGR/13831677.2

Second Paragraph 12.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 12 of the Plaintiff's Amended Complaint, and therefore deny same.

Second Paragraph 13.

Defendants admit that Plaintiff completed a "Hard Money Loan Application" and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014 ("Application"), all as more fully set forth in the Counterclaim and Third-Party Complaint below.  On page 1 of the faxed Application, Plaintiff Elie wrote that she "Plan[s] to renovate [the P]roperty & list it for sale within 2 yrs or refinance it using my rental income & side business I'm starting."  On page 2 of the faxed Application, Plaintiff Elie wrote that she received rental income of $12,600, and that she would make $30,000 to $40,000 in property rehab costs.  On page 3 of the faxed Application, Plaintiff Elie signed a statement stating that "Undersigned represents that the property being used as security for this loan is investment property.  It is not the borrower's primary residence.  Further all loan funds will only be used for investment business reasons.  None of the loan funds will be used for consumer or personal reasons. … The undersigned represents that

–11–

all of the above is true and correct." The faxed Application attached at page 5 a Purpose of Loan letter dated April 27, 2014 and signed by Plaintiff Elie which outlined the renovations and repairs that she planned to the make the Property at a cost of $40,000 to $50,000. The faxed Application also attached at pages 6-9 a Residential Lease Agreement for the Property dated October 1, 2013 signed by Floyd, as tenant, and Elie, as landlord, with monthly rent of $4,200.00. Finally, the faxed Application attached at pages 10-11 the Quit Claim Deed to Plaintiff Elie. Defendants deny all other allegations contained in the second paragraph 13 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application, which speaks for itself.

<p style="text-align:center">Second Paragraph 14.</p>

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014. Defendants deny all other allegations regarding the Application contained in the second paragraph 14 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application, which speaks for itself. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second paragraph 9 of the Plaintiff's Amended

<p style="text-align:center">–12–</p>

Complaint regarding Elie's dependence on her parents, who resided at 9002 Cedar Grove Road, and therefore deny same.

<div align="center">Second Paragraph 15.</div>

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014, and that she listed her birth year on the Application. Defendants deny all other allegations contained in the second paragraph 15 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application, which speaks for itself.

<div align="center">Second Paragraph 16.</div>

Defendants deny the allegations contained in the second paragraph 16 of Plaintiff's Amended Complaint. Plaintiff Elie represented on page 3 of the Application that "the property being used as security for this loan is investment property. It is not the borrower's primary residence. Further all loan funds will only be used for investment business reasons. None of the loan funds will be used for consumer or personal reasons."

<div align="center">Second Paragraph 17.</div>

Defendants deny the allegations contained in the second paragraph 17 of Plaintiff's Amended Complaint. Plaintiff Elie represented on page 3 of the

<div align="center">–13–</div>

Application that "the property being used as security for this loan is investment property.  It is not the borrower's primary residence.  Further all loan funds will only be used for investment business reasons.  None of the loan funds will be used for consumer or personal reasons."

<div align="center">Second Paragraph 18.</div>

Defendants deny the allegations contained in the second paragraph 18 of Plaintiff's Amended Complaint.  Plaintiff Elie represented on page 3 of the Application that "the property being used as security for this loan is investment property.  It is not the borrower's primary residence.  Further all loan funds will only be used for investment business reasons.  None of the loan funds will be used for consumer or personal reasons."

<div align="center">19.</div>

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014, and that Plaintiff Elie represented on page 3 of the Application that "the property being used as security for this loan is investment property.  It is not the borrower's primary residence.  Further all loan funds will only be used for investment business reasons.  None of the loan funds will be used for consumer or personal reasons."

<div align="center">–14–</div>

Defendants deny all other allegations contained in paragraph 19 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application and Plaintiff's representations regarding investment business reasons for the loan, which speak for themselves.

20.

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014, and that Plaintiff Elie represented on page 3 of the Application that "the property being used as security for this loan is investment property.  It is not the borrower's primary residence.  Further all loan funds will only be used for investment business reasons.  None of the loan funds will be used for consumer or personal reasons." Defendants deny all other allegations contained in paragraph 20 and footnote 1 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application and Plaintiff's representations regarding investment business reasons for the loan, which speak for themselves.

21.

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014, and that

–15–

Plaintiff Elie represented on page 3 of the Application that "the property being used as security for this loan is investment property.  It is not the borrower's primary residence."  Defendants deny all other allegations contained in paragraph 21 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application and Plaintiff's representations regarding the investment property, which speak for themselves.

22.

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014.  Defendants deny all other allegations contained in paragraph 22 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application, which speaks for itself.

23.

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014, and that Plaintiff Elie represented on page 3 of the Application that "the property being used as security for this loan is investment property."  Defendants deny all other allegations contained in paragraph 23 of Plaintiff's Amended Complaint, including

SGR/13831677.2

all allegations inconsistent with the Application and Plaintiff's representations regarding the investment property, which speak for themselves.

24.

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014, and that Plaintiff Elie listed rental income of $12,600 on page 2 of the Application and attached a Residential Lease Agreement for the Property at pages 6-9 of the faxed Application.  Defendants deny all other allegations contained in paragraph 24 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application, which speaks for itself.

25.

Defendants admit that Plaintiff completed the Application and submitted the same by fax to Southeast Private Lending, LLC on April 29, 2014.  Defendants deny all other allegations contained in paragraph 25 of Plaintiff's Amended Complaint, including all allegations inconsistent with the Application, which speaks for itself.

SGR/13831677.2

26.

Defendants admit that Defendant White Glass sent Plaintiff a Letter of Intent dated May 6, 2014, the contents of which included a "Commercial Investment Property Disclosure," a "Loan Term Sheet," an "Addendum A: Schedule of Estimated Fees," and an "Addendum B: Required Documents" ("Letter of Intent"), all as more fully set forth in the Counterclaim and Third-Party Complaint below. The Commercial Investment Property Disclosure stated that "Financing is to be used solely for the purpose of acquiring or refinancing property that is used solely for investment for profit or commercial purposes" and "If all or a portion of the Property consists of a single family residential dwelling …, Borrower cannot at any time, occupy or intend to occupy the Property as a primary or secondary personal residence."  The Commercial Investment Property Disclosure also stated that "Representations made by Borrower to Lender regarding the purpose of the loan is a material inducement for Lender to fund the subject loan, and the Lender would not have considered funding the loan if financing did not meet the above guidelines."  The Loan Term Sheet set forth the terms for the loan, including a 13% nominal annual interest rate and a 3% lender fee,  Additionally, the Loan Term Sheet included as a Condition of Funding that "This is a business purpose

SGR/13831677.2

loan and Borrower agrees not to occupy subject property while loan is in place."
Defendants deny all remaining allegations contained in paragraph 26 of the
Plaintiff's Amended Complaint, including all allegations inconsistent with the
Letter of Intent, which speaks for itself.

<div align="center">27.</div>

Defendants admit that on May 16, 2014, Plaintiff Elie did execute loan
documents, including but not limited to a Secured Promissory Note ("Note"), a
Commercial Investment Property Certificate ("Certificate"), a Guaranty
Agreement ("Guaranty"), and a Security Deed, Assignment of Rents, Security
Agreement and Fixture Filing ("Security Deed"), all in favor of AMF, all as more
fully set forth in the Counterclaim and Third-Party Complaint below. Defendants
deny all remaining allegations contained in paragraph 27 of the Plaintiff's
Amended Complaint.

<div align="center">28.</div>

Defendants admit that on May 16, 2014, Plaintiff Elie did execute the Note
in favor of AMF for a loan in the principal amount of $510,000.00, together with
interest at the rate of 13% per annum, all as more fully set forth in the
Counterclaim and Third-Party Complaint below. Defendants also admit that on

<div align="center">−19−</div>

May 16, 2014, Plaintiff Elie did execute an Acknowledgement and Receipt of Settlement Statement ("Acknowledgement") wherein she did acknowledge that she had received, reviewed and approved the Settlement Statement for Plaintiff Elie's loan closing ("Settlement Statement") which itemized settlement charges to Elie, as borrower, in the total amount of $38,610.87, which included a 3% origination fee to AMF, as the lender, and a 3% fee to Allan Znoj, the originating broker, all as more fully set forth in the Counterclaim and Third-Party Complaint below. Defendants deny all remaining allegations contained in paragraph 28 of the Plaintiff's Amended Complaint, including all allegations inconsistent with the Note, Acknowledgement, and Settlement Statement, which speak for themselves.

<div align="center">29.</div>

Defendants admit that on May 16, 2014, Plaintiff Elie did execute the Acknowledgement wherein she acknowledged that she had received, reviewed and approved the Settlement Statement, as well as receipt of the loan proceeds in full. Defendants also admit, as set forth in the Settlement Statement, that at the loan closing on May 16, 2014, a total of $38,610.87 was collected from Plaintiff Elie from the $510,000.00 principal amount of the loan to pay lender and broker origination fees, wiring and overnight courier fees, interest, property insurance,

SGR/13831677.2

title services and title insurance, and recording charges, and that $471,389.13 would be disbursed to Plaintiff Elie on May 19, 2016, and that said amount was disbursed to Plaintiff Elie.  Defendants deny all other allegations contained in paragraph 29 of the Plaintiff's Amended Complaint, including all allegations inconsistent with the Acknowledgement and Settlement Statement, which speak for themselves.

30.

Defendants deny the allegations contained in paragraph 30 of the Plaintiff's Amended Complaint.

31.

Defendants admit that Morris, Hardwick & Schneider served as the closing attorney and settlement agent for the loan which closed on May 16, 2014. Defendants deny all other allegations contained in paragraph 31 of the Plaintiff's Amended Complaint.

32.

Defendants deny the allegations contained in paragraph 30 of the Plaintiff's Amended Complaint.

–21–

33.

Defendants deny that they made any material statements in the Note, Certificate, Guaranty, and Security Deed ("Loan Documents") that are patently false, as alleged in paragraph 33 of the Plaintiff's Amended Complaint. Defendants further respond to the allegations contained in paragraph 31 of the Plaintiff's Amended Complaint as follows:

a.  Defendants admit that Plaintiff Elie represented in the Loan Documents that she was a professional real estate investor.

b.  Defendants admit that Plaintiff Elie represented in the Loan Documents that she has not at any time, will not and has no intention of occupying the Property as a primary or secondary personal residence.

c.  Defendants admit that Plaintiff Elie represented in the Loan Documents that financing is being used solely for the purpose of acquiring or refinancing of real property.

d.  Defendants admit that Plaintiff Elie represented in the Loan Documents that she obtained the assistance of counsel prior to engaging with Defendants.

e.  Defendants admit that Plaintiff Elie represented in the Loan Documents that she had the assistance of her own counsel in reviewing and executing the

–22–

note.

    f.  Defendants admit that Plaintiff Elie represented in the Loan Documents that the meaning and effect of such provisions were fully explained to her by her independent counsel.

Defendants further admit in response to paragraph 33 of Plaintiff's Amended Complaint that AMF reasonably relied up these and other material representations of Plaintiff Elie, and that such representations were a material inducement for AMF to fund the loan, and that AMF otherwise would not have considered funding the loan.  Defendants deny all other allegations contained in paragraph 33 of the Plaintiff's Amended Complaint.

<div align="center">34.</div>

    Defendants admit the allegations contained in paragraph 34 of the Plaintiff's Amended Complaint.

<div align="center">35.</div>

    Defendants deny the allegations contained in paragraph 35 of the Plaintiff's Amended Complaint, and show that Plaintiff Elie represented otherwise in the Application and the Loan Documents.

<div align="center">–23–</div>

36.

Defendants admit that AMF knew that Plaintiff Elie was an individual, but Defendants deny all other allegations contained in paragraph 36 of the Plaintiff's Amended Complaint, and show that Plaintiff Elie represented otherwise in the application and Loan Documents.

37.

Defendants deny the allegations contained in paragraph 37 of the Plaintiff's Amended Complaint, and show that Plaintiff Elie represented that her residence address was 5108 Ashford Gables Drive, Dunwoody/Atlanta, Georgia 30330 in the Application, the Loan Documents, and the Settlement Statement.

38.

Defendants admit that the transaction evidenced by the Loan Documents constitutes a commercial transaction, not a consumer transaction, and that said commercial transaction is not governed by or subject to the Truth in Lending Act ("TILA"), the Georgia Fair Lending Act ("GFLA"), the Real Estate Settlement Procedures Act ("RESPA"), or the Fair Debt Collection Practices Act ("FDCPA"). Defendants deny all other allegations contained in paragraph 38 of the Plaintiff's Amended Complaint.

–24–

39.

Defendants admit that the Security Deed grants a first-priority security interest and lien in, on and encumbering the Property, all rents from the Property, and all fixtures on the Property. Defendants deny all other allegations contained in paragraph 39 of the Plaintiff's Amended Complaint.

40.

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not governed by or subject to TILA, and that, accordingly, no three day right of rescission was required by law. Defendants deny all other allegations contained in paragraph 40 of the Plaintiff's Amended Complaint.

41.

Defendants deny the allegations contained in paragraph 41 of the Plaintiff's Amended Complaint.

42.

Defendants admit that the transaction evidenced by the Loan Documents constitutes a commercial transaction, not a consumer credit transaction, and that the Loan Documents are valid and enforceable. Defendants deny all other

allegations contained in paragraph 42 of the Plaintiff's Amended Complaint.

43.

Defendants deny the allegations contained in paragraph 43 of the Plaintiff's Amended Complaint.

44.

Defendants deny the allegations contained in paragraph 44 of the Plaintiff's Amended Complaint.

45.

Defendants admit that the subject loan was a private, hard money loan made strictly for business or commercial purposes that was secured by investment property which Plaintiff represented was not and would not be used as her residence. Accordingly, for the subject loan, AMF was not acting as a consumer lender and no National Mortgage Licensing System (NMLS) number was required to be listed on the subject Loan Documents. Defendants deny all allegations contained in paragraph 45 of the Plaintiff's Complaint, especially to the extent that such allegations suggest otherwise.

SGR/13831677.2

46.

Defendants admit that the subject loan was a private, hard money loan made strictly for business or commercial purposes that was secured by investment property which Plaintiff represented was not and would not be used as her residence.  Accordingly, for the subject loan, AMF was not acting as a consumer mortgage lender and no registration as such with the State of Georgia was required for the subject commercial loan transaction.  Defendants deny all allegations contained in paragraph 46 of the Plaintiff's Complaint, especially to the extent that such allegations suggest otherwise.

## COUNT I AND II

### TRUTH IN LENDING ACT AND
### GEORGIA FAIR LENDING ACT VIOLATIONS

47.

Defendants incorporate herein by reference their above responses to the allegations contained in paragraphs 1 through 46 of the Plaintiffs' Amended Complaint, as if fully set forth herein.

48.

Defendants deny the allegations contained in paragraph 48 of the Plaintiff's Amended Complaint.

–27–

49.

Defendants deny the allegations contained in paragraph 49 of the Plaintiff's Amended Complaint.

50.

Defendants admit that the commercial loan transaction evidenced by the Loan Documents is secured by the Property pursuant to the Security Deed. Defendants deny the allegations contained in paragraph 50 of the Plaintiff's Amended Complaint.

51.

Defendants admit that the 13% interest rate was fully disclosed to Plaintiff Elie in the Letter of Intent and the Note.   Defendants deny the allegations contained in paragraph 51 of the Plaintiff's Amended Complaint.

52.

Defendants admit that the origination and lender fees for the loan were fully disclosed to Plaintiff Elie in the Letter of Intent, the Note, and the Settlement Statement.   Defendants deny the allegations contained in paragraph 52 of the Plaintiff's Amended Complaint.

SGR/13831677.2

53.

Defendants deny the allegations contained in paragraph 53 of the Plaintiff's Amended Complaint.

54.

Defendants admit that the Note for the commercial transaction had an original maturity date of May 15, 2015 whereby all outstanding and unpaid principal was due and payable on said date, which maturity date was later extended until July 15, 2015.  Defendants deny the allegations contained in paragraph 54 of the Plaintiff's Amended Complaint.

55.

Defendants deny the allegations contained in paragraph 55 of the Plaintiff's Amended Complaint.

56.

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not a high cost home loan and is not governed by or subject to TILA or GFLA, and that Defendants were not required to consider the matters listed in paragraph 56 of Plaintiff's Amended Complaint.  Defendants also admit that the title for and the value of the investment

SGR/13831677.2

Property, as well as Plaintiff Elie's representations and warranties regarding the loan's business purpose, were the main considerations in deciding whether to fund the commercial transaction evidenced by the Loan Documents, and Defendants did not need to consider the matters listed in paragraph 56 of the Plaintiff's Amended Complaint.  Defendants deny the allegations contained in paragraph 56 of the Plaintiff's Amended Complaint.

57.

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not a high cost home loan and is not governed by or subject to TILA or GFLA, and that Defendants were not required to verify the matters listed in paragraph 57 of Plaintiff's Amended Complaint.  Defendants admit that the title for and the value of the investment Property, as well as Plaintiff Elie's representations and warranties regarding the loan's business purpose, were the main considerations in deciding whether to fund the commercial transaction evidence by the Loan Documents, and that they did not need to verify the matters listed in paragraph 57 of the Plaintiff's Amended Complaint.  Defendants deny the allegations contained in paragraph 57 of the Plaintiff's Amended Complaint.

–30–

58.

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not a high cost home loan and is not governed by or subject to TILA or GFLA, and that no pre-loan counseling by Plaintiff Elie was required.    Defendants deny the allegations contained in paragraph 58 of the Plaintiff's Amended Complaint.

59.

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not a high cost home loan and is not governed by or subject to TILA or GFLA, and that no language disclosures in conspicuous type size was required.  Defendants deny the allegations contained in paragraph 59 of the Plaintiff's Amended Complaint.

60.

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not a high cost home loan and is not governed by or subject to TILA or GFLA, and that the late fee provisions of the Loan Documents do not violate federal regulations and GFLA. Defendants deny the allegations contained in paragraph 60 of the Plaintiff's

SGR/13831677.2

Amended Complaint.

## COUNT III

## <u>VIOLATIONS OF RESPA</u>

### 61.

Defendants incorporate herein by reference their above responses to the allegations contained in paragraphs 1 through 60 of the Plaintiffs' Amended Complaint, as if fully set forth herein.

### 62.

Defendants admit that Plaintiff Elie sent a purported Qualified Written Request ("QWR") to Defendant AMF, and that AMF timely sent a response to Plaintiff Elie stating that that the Loan Documents at issue relate to a commercial credit transaction, not a consumer credit transaction, and that RESPA does not apply to the Loan Documents and the commercial credit transaction at issue, and that no response to Plaintiff's purported QWR is required.  Defendants deny the allegations contained in paragraph 62 of the Plaintiff's Amended Complaint.

### 63.

Defendants admit that Plaintiff Elie sent a purported Qualified Written Request ("QWR") to Defendant AMF, and that AMF timely sent a response to

SGR/13831677.2

Plaintiff Elie stating that that the Loan Documents at issue relate to a commercial credit transaction, not a consumer credit transaction, and that RESPA does not apply to the Loan Documents and the commercial credit transaction at issue, and that no response to Plaintiff's purported QWR is required.  Defendants deny the allegations contained in paragraph 63 of the Plaintiff's Amended Complaint.

<p style="text-align:center">64.</p>

Defendants deny that Plaintiff Elie is entitled to recover any damages related to her purported QWR or under RESPA.   Defendants deny the allegations contained in paragraph 64 of the Plaintiff's Amended Complaint.

<p style="text-align:center"><strong>COUNT IV</strong></p>

<p style="text-align:center"><strong><u>FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS</u></strong></p>

<p style="text-align:center">65.</p>

Defendants incorporate herein by reference their above responses to the allegations contained in paragraphs 1 through 64 of the Plaintiffs' Amended Complaint, as if fully set forth herein.

<p style="text-align:center">66.</p>

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not governed by or

<p style="text-align:center">−33−</p>

subject to FDCPA.  Defendants deny the allegations contained in paragraph 66 of the Plaintiff's Amended Complaint.

<div align="center">67.</div>

Defendants admit that the commercial loan transaction at issue in this case, as evidenced by the Application and Loan Documents, is not governed by or subject to FDCPA.  Defendants deny the allegations contained in paragraph 67 of the Plaintiff's Amended Complaint.

<div align="center">Demand for Jury Trial</div>

<div align="center">68.</div>

Defendants deny the allegations contained in paragraph 68 of the Plaintiff's Amended Complaint.

<div align="center">Prayer for Relief</div>

<div align="center">69.</div>

Defendants deny the unnumbered paragraph and prayer for relief set forth at the end of the Plaintiff's Amended Complaint on pages 17 and 18, including sub-parts (a)1, (a)2, (a)3, (a)4, (b), (c), and (d).   Further, Defendants deny all allegations and prayers of Plaintiff Elie as may be asserted in Plaintiff's Amended Complaint not specifically admitted herein.

<div align="center">−34−</div>

WHEREFORE, Defendants AMF, White Glass, Crandall, and Aclaime pray that Plaintiff's Amended Complaint be dismissed with prejudice, with all costs cast against Plaintiff Elie, that the requested relief be denied, and for such other and further relief as is just and proper, including trial by jury as to all issues so triable.

## AMF'S COUNTERCLAIM AGAINST LAUREYNN M. ELIE AND THIRD-PARTY COMPLAINT AGAINST MARIE C. GELIN AND PRENTICE L. FLOYD

Subject to and without waiver of the foregoing affirmative defenses, Counterclaim Plaintiff AMF Holdings, LLC ("AMF") asserts its Counterclaim against Counterclaim Defendant Laureynn M. Elie ("Elie"), as well as its Third-Party Complaint against Third-Party Defendants Marie C. Gelin ("Gelin") and Prentice L. Floyd ("Floyd"), as follows:

### NATURE OF THE ACTION

1.

This action involves a commercial loan transaction, not a consumer loan transaction, that was secured by investment property located at 9002 Cedar Grove Road, Fairburn, Fulton County, Georgia 30213, which property is more particularly described in Exhibit 1 attached hereto and fully incorporated herein by

SGR/13831677.2

reference ("Property").  The borrower defaulted on the loan, and the private, hard money lender is entitled to collect the outstanding, unpaid indebtedness owed under the note and guaranty, as well as conduct a foreclosure sale of the Property under the security deed that the borrower signed.

<u>THE PARTIES, JURISDICTION AND VENUE</u>

2.

Counterclaim Plaintiff and Third-Party Plaintiff AMF is a Utah limited liability company, with its principal place of business located in Sandy, Utah.  It is wholly owned by, and its sole member is, Aclaime Credit Strategies Fund, LP, a Utah limited partnership with its principal place of business located in Sandy, Utah.  AMF makes private, hard money loans which are strictly for business or commercial purposes and which are fully secured by investment properties which are not used as the borrowers' residences.  AMF is the owner and holder of the agreements, instruments, and loan documents at issue in this action.

3.

Counterclaim Defendant Elie is an individual and citizen of the State of Georgia.  Elie represented to AMF that her residence address was 5108 Ashford Gables Dr., Dunwoody/Atlanta, DeKalb County, Georgia 30338-6780.  Elie is subject to the jurisdiction and venue of this Court by virtue of having brought this

−36−

action.

<div align="center">4.</div>

Third-Party Defendant Gelin is an individual, who resides in Fulton County and is a citizen of the State of Georgia.  Gelin is Elie's mother.  Gelin was a licensed mortgage broker in the State of Georgia, and on December 14, 2007, the Georgia Department of Banking and Finance sent her a Notice of Intent to Revoke Annual License and Order to Cease and Desist relating to evidence that she purposefully withheld, deleted, destroyed or altered information requested by an examiner in violation of the Georgia Residential Mortgage Act.  Gelin is subject to the jurisdiction and venue of this Court.  Gelin may be served with summons and process at 9002 Cedar Grove Road, Fairburn, Fulton County, Georgia 30213.

<div align="center">5.</div>

Third-Party Defendant Floyd is an individual, who resides in Fulton County and is a citizen of the State of Georgia.  Floyd executed, as a tenant, a Residential Lease Agreement for the Property.  Floyd is subject to the jurisdiction and venue of this Court.  Floyd may be served with summons and process at 9002 Cedar Grove Road, Fairburn, Fulton County, Georgia 30213.

<div align="center">6.</div>

Jurisdiction and venue are proper in this Court.

<div align="center">−37−</div>

OPERATIVE FACTS

*The Application and Letter of Intent*

7.

On April 29, 2014, Elie completed a "Hard Money Loan Application" ("Application") and submitted the same by fax to Allan Znoj of Southeast Private Lending, LLC, an independent hard money loan originator.  A true and correct copy of the faxed Application is attached hereto as Exhibit 2 and fully incorporated herein by reference.

8.

On page 1 of the faxed Application, Elie wrote that she "Plan[s] to renovate [the P]roperty & list it for sale within 2 yrs or refinance it using my rental income & side business I'm starting."

9.

On page 2 of the faxed Application, Elie wrote her home address as 5108 Ashford Gables Drive, Dunwoody, Georgia   30338.  Elie also wrote that she received rental income of $12,600, and that she would make $30,000 to $40,000 in property rehab costs.

−38−

10.

On page 3 of the faxed Application, Elie signed a statement stating that "Undersigned represents that the property being used as security for this loan is investment property.  It is not the borrower's primary residence.  Further all loan funds will only be used for investment business reasons.  None of the loan funds will be used for consumer or personal reasons. … The undersigned represents that all of the above is true and correct."

11.

The faxed Application attached at page 5 a Purpose of Loan letter dated April 27, 2014 and signed by Elie which outlined the renovations and repairs that she planned to make to the Property at a cost of $40,000 to $50,000.

12.

The faxed Application also attached at pages 6-9 a Residential Lease Agreement for the Property dated October 1, 2013 signed by Floyd, as tenant, and Elie, as landlord, with a monthly rent of $4,200.

13.

The faxed Application further attached at pages 10-11 a Quit Claim Deed dated September 10, 2013, from Gelin, as grantor, to Elie, as grantee, and witnessed by Floyd, which deed is recorded in Book 53118, Page 171, Records of

SGR/13831677.2

Fulton County, Georgia.

14.

On May 9, 2014, Elie supplemented her Application with a signed Purpose of Loan Proceed Letter ("Purpose Letter"). A true and correct copy of the Purpose Letter is attached hereto as Exhibit 3 and fully incorporated herein by reference.

15.

In the Purpose Letter, Elie explained how she was going to use the loan proceeds, including to "complete repairs to the home, which will be higher than initially anticipated, and I plan to add many extras ($100K Est)," to "purchase a nice condo in cash at college in TN to keep it for future investment," to "create an online swimwear line side business (Designs, Inventory, Marketing, etc.)," and "invest in some real estate that I have been watching here in the local market, as my agent is constantly bringing new opportunities to me to consider."

16.

White Glass Lending, LLC ("White Glass") sent Elie a Letter of Intent dated May 6, 2014, the contents of which included a "Commercial Investment Property Disclosure," a "Loan Term Sheet," an "Addendum A: Schedule of Estimated Fees," and an "Addendum B: Required Documents" ("Letter of Intent"). A true

SGR/13831677.2

and correct copy of the Letter of Intent is attached hereto as Exhibit 4 and fully incorporated herein by reference.

17.

The Commercial Investment Property Disclosure, which was part of the Letter of Intent, stated that "Financing is to be used solely for the purpose of acquiring or refinancing property that is used solely for investment for profit or commercial purposes" and "If all or a portion of the Property consists of a single family residential dwelling …, Borrower cannot at any time, occupy or intend to occupy the Property as a primary or secondary personal residence."

18.

The Commercial Investment Property Disclosure, which was part of the Letter of Intent, also stated that "Representations made by Borrower to Lender regarding the purpose of the loan is a material inducement for Lender to fund the subject loan, and the Lender would not have considered funding the loan if financing did not meet the above guidelines."

19.

The Loan Term Sheet, which was part of the Letter of Intent, set forth the terms for the loan, including a 13% nominal annual interest rate and a 3% lender fee.  However, the Loan Term Sheet listed the lender as TBD (to be determined).

SGR/13831677.2

AMF was later identified as the lender which would fund the loan.

20.

Additionally, the Loan Term Sheet, which was part of the Letter of Intent, included as a Condition of Funding that "This is a business purpose loan and Borrower agrees not to occupy subject property while loan is in place."

21.

Addendum A: Schedule of Estimated Fees, which was part of the Letter of Intent, listed various fees, including a 3% lender fee, to be paid from borrower's principal loan amount at closing.

22.

Addendum B: Required Documents, which was part of the Letter of Intent, listed various documents that must be provided prior to closing, including proof of property insurance that includes coverage for a vacant home and a copy of the lease or rental agreement if property occupied by a tenant.

*The Loan Documents*

23.

On May 16, 2014, Elie executed a Secured Promissory Note ("Note") in the principal amount of $510,000.00 made payable to AMF.  The Note accrued interest at the rate of 13% per annum, with monthly interest payments in arrears of

–42–

$5,601.74 due from July 1, 2014 until the maturity date of May 15, 2015, and with the entire principal and unpaid interest accrued thereon being due on the maturity date. A true and correct copy of the Note is attached hereto as Exhibit 5 and fully incorporated herein by reference.

24.

The Note identifies Elie's address as 5108 Ashford Gables Drive, Atlanta, Georgia 30338.

25.

Paragraph 3 of the Note provides that Elie, as borrower, shall pay to Southeast Private Lending, LLC in cash at closing a loan origination fee in the amount of $15,300, and shall also pay to AMF a lender fee in the amount of $15,300. The Note further stated that Elie, as borrower, acknowledges and agrees that these fees are neither a reduction of the principal amount nor a payment for interest and are deemed fully earned upon receipt.

26.

Paragraph 16(q) of the Note states in all capital letters "Business or Commercial Purpose. AS A MATERIAL INDUCEMENT TO HOLDER'S [AMF'S] DECISION TO MAKE THE LOAN EVIDENCED BY THIS NOTE, BORROWER EXPRESSLY WARRANTS AND REPRESENTS TO HOLDER

–43–

THAT THIS NOTE IS INTENDED FOR AND WILL BE USED FOR A BUSINESS OR COMMERCIAL PURPOSE AND THAT THIS NOTE IS NOT INTENDED FOR A CONSUMER, PERSONAL, FAMILY OR HOUSEHOLD PURPOSE."

27.

In conjunction with the Note, Elie also executed a Commercial Investment Property Certificate ("Certificate") which states that the financing is commercial in nature. In the Certificate, Elie represented and warranted to AMF that she was borrowing the funds for investment and commercial purposes, and not for personal or consumer purposes. In the Certificate, Elie also promised AMF that she will not occupy and has no intention of occupying the property as a primary or secondary personal residence.  A true and correct copy of the Certificate is attached hereto as Exhibit 6 and fully incorporated herein by reference.

28.

Additionally, in the Certificate, Elie acknowledged that she understood that the financing is private capital, that AMF is a private money lender, and that the transaction is between two private parties and is not subject to the laws and regulations that consumer loan would be subject to.  Elie further certified in the

−44−

Certificate that the financing is commercial and that she is a professional real estate investor.

29.

Moreover, in the Certificate, Elie agreed and acknowledged that the Certificate and the representations contained therein are a material inducement for AMF to fund the loan, and Elie acknowledged that AMF would not have considered funding the loan if such certification and representation was not tendered by Elie.

30.

To secure the Note, on May 16, 2014, Elie also executed a Security Deed, Assignment of Rents, Security Agreement and Fixture Filing ("Security Deed") conveying a security interest in the Property to AMF. The Security Deed is recorded at Deed Book 53836, Page 164, Fulton County, Georgia property records. In the Security Deed, Elie represented that the loan is for commercial purposes and that she has not and shall not occupy, establish, and use the Property as her principal residence at any time before or after the execution of the Security Deed. A true and correct copy of the Security Deed is attached hereto as Exhibit 7 and fully incorporated herein by reference.

SGR/13831677.2

31.

Definition (B) of the Security Deed identifies Elie's address as 5108 Ashford Gables Drive, Atlanta, Georgia 30338.  Section 15 of the Security Deed provides that Elie shall promptly notify AMF of her change of address.  Elie never reported a change of address from Ashford Gables Drive.

32.

Section 20 of the Security Deed provides that AMF, as agent and attorney-in-fact for Elie, may invoke the power of sale as follows:

> If Lender [AMF] invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law.  Lender, without further demand on Borrower [Elie], shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines.  Lender or its designee may purchase the Property at any sale.

33.

The Waiver of Borrower's Rights and Closing Attorney's Affidavit executed at the closing of the loan, which are attached as the final two recorded pages of the

Security Deed, expressly reference the Lender's power to sell the Property by nonjudicial foreclosure and that the closing attorney reviewed and explained to Elie, prior to her execution of the Security Deed, among other things, the terms and provisions of the Security Deed, and particularly the provisions thereof authorizing the Lender to sell the Property by nonjudicial foreclosure under the power of sale.

34.

On May 16, 2014, Elie also executed a Guaranty Agreement ("Guaranty") which identifies Elie's address as 5108 Ashford Gables Drive, Atlanta, Georgia 30338, and whereby Elie absolutely, irrevocably and unconditionally guaranteed to AMF the payment and performance of borrower's present and future indebtedness and obligations under the Note and other loan documents.  A true and correct copy of the Guaranty is attached hereto as Exhibit 8 and fully incorporated herein by reference.

35.

The Note, Certificate, Security Deed and Guaranty, together with all other documents evidencing, securing or otherwise related to the May 16, 2014 loan transaction and indebtedness evidenced by the Note, are collectively the "Loan Documents."

–47–

36.

The loan transaction and the Loan Documents at issue in this case relate to a commercial credit transaction, not a consumer credit transaction.

37.

On May 16, 2014, when Elie entered into the Loan Documents and the commercial loan transaction concerning the Property, she fully understood what she was doing and the nature, terms, significance and implications of the commercial loan transaction and the Loan Documents.

38.

At the loan closing on May 16, 2014, Elie also executed an Acknowledgement and Receipt of Settlement Statement ("Acknowledgement") wherein she acknowledged that she had received, reviewed and approved the Settlement Statement for the loan closing ("Settlement Statement").  True and correct copies of the Acknowledgement and the Settlement Statement are attached hereto as Exhibits 9 and 10, respectively, and are fully incorporated herein by reference.

39.

The Settlement Statement itemized settlement charges to Elie, as borrower, in the total amount of $38,610.87, which included a 3% origination fee to AMF, as

–48–

the lender, and a 3% fee to Allan Znoj, the originating broker.

<div align="center">40.</div>

Per the Settlement Statement, at the closing on May 16, 2014, a total of $38,610.87 was collected from Elie from the $510,000.00 principal amount of the loan to pay lender and broker origination fees, wiring and overnight courier fees, interest, property insurance, title services and title insurance, and recording charges, and the net amount of $471,389.13 was identified in the Settlement Statement as the amount that would be disbursed to Elie on May 19, 2014.

<div align="center">41.</div>

The Loan Documents, including the Note and Guaranty, are valid and enforceable as between AMF and Elie.

<div align="center">42.</div>

The Security Deed constitutes a first-priority security interest and lien in, on and encumbering the Property, all rents from the Property, and all fixtures on the Property, and the Security Deed is valid and enforceable as between AMF and Elie.

<div align="center">−49−</div>

*Funds Advanced and Disbursed to Elie,*
*Loan Extension, and Elie's Default*

43.

Net loan proceeds funds in the amount of $471,389.13 were disbursed to Elie on May 19, 2014, pursuant to the terms of the Loan Documents and the Settlement Statement.

44.

After the closing of the loan transaction on May 16, 2014, certain monthly interest payments in the amount of $5,601.74 were made via checks drawn on the checking account of Gelin.

45.

On the Note's May 15, 2015 maturity date, Elie did not pay the balance due and went into default.  On May 29, 2015, Elie and AMF entered into a Secured Promissory Note Extension Agreement ("Extension") whereby AMF agreed to temporarily forebear its enforcement of default remedies, postpone a foreclosure sale, and extend the maturity date until July 15, 2015.  A true and correct copy of the Extension is attached hereto as Exhibit 11 and fully incorporated herein by reference.

46.

Paragraph 6 of the Extension provides that except as modified herein, the terms and conditions of the Loan Documents shall continue in full force and effect. In Paragraph 8(b) of the Extension, Elie represented, warranted, acknowledged and covenanted that the Loan Documents, as modified by the Extension, are fully enforceable in accordance with their respective terms.

47.

Elie failed to meet her obligations under the Loan Documents, as extended. Elie defaulted under the express terms of the Loan Documents, as extended, including specifically the Note and Guaranty, by, among other things, failing to make payments when due and owing.

48.

By a letter dated September 4, 2015, AMF notified Elie, in her capacities as borrower and guarantor, that the Loan Documents were in default and that AMF demanded immediate payment in full of the entire outstanding principal balance owed under the Note and Guaranty, together with all interest accruing thereon, and all other fees, charges and expenses owed under the Loan Documents. Additionally, by letter dated September 17, 2015, AMF notified Elie, in her capacities as borrower and guarantor, that AMF demanded immediate payment in

−51−

full of the entire outstanding indebtedness.  Despite such notice and demand, Elie

failed and refused to remit payment of any amounts due and owing under Note and

Guaranty and remains indebted to AMF for the entire outstanding indebtedness.

True and correct copies of the September 4, 2015 and September 17, 2015 notice

and demand letters are attached hereto as Exhibits 12 and 13, respectively, and are

fully incorporated herein by reference.

*The Scheduled Foreclosure Sale*
*And Elie's Lawsuit*

49.

On October 1, 2015, by certified mail - return receipt requested and regular

United States Mail, AMF, by and through its counsel, provided notice to Elie that

the Loan Documents remained in default and also provided notice of its initiation

of foreclosure proceedings under the Security Deed regarding the Property.  The

October 1, 2015 letter enclosed a copy of the Notice of Sale Under Power In

Security Deed submitted to *The Fulton County Daily Report*, the legal organ for

Fulton County, Georgia, the county in which the Property is located.  A true and

correct copy of the October 1, 2015 notice letter is attached hereto as Exhibit 14.

–52–

50.

AMF advertised the Property for sale in *The Fulton County Daily Report*, the legal organ for Fulton County, Georgia and the newspaper published in Fulton County, Georgia in which advertisements for sheriff's sales are regularly published. AMF's advertisements for the scheduled foreclosure sale were published in *The Fulton County Daily Report* for four consecutive weeks immediately prior to the scheduled foreclosure sale on each of October 7, 2016, October 14, 2015, October 21, 2015, and October 28, 2015.

51.

AMF was prepared to exercise its rights and remedies under the Security Deed and foreclose on the Property on the first Tuesday of November, 2016. However, on October 8, 2015, Elie filed a complaint in the Superior Court of Fulton County, Georgia seeking injunctive and other relief against AMF and White Glass. That same date, Elie also filed a Notice of Pendency of Action, effectively a lis pendens, against the Property. The lis pendens is recorded at Book 55453, Page 45, Fulton County, Georgia property records. The superior court case was removed by AMF and White Glass to this Court.

SGR/13831677.2

# COUNT I

## BREACH OF NOTE AND GUARANTY

(Against Counterclaim Defendant Elie)

### 52.

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 51 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

### 53.

By virtue of the foregoing, Elie is liable to AMF for breach of the Note and the Guaranty for the entire outstanding indebtedness.

### 54.

Elie remains indebted to AMF under the Loan Documents, including specifically the Note and Guaranty, in the principal amount of $510,000, plus interest and default interest as provided for in the Note, and fees and late charges as provided for in the Note, as well as collection costs and expenses, including reasonable attorneys' fees, as provided for in the Note.  AMF is entitled to recover the entire outstanding indebtedness owed under the Note from Elie.

SGR/13831677.2

## COUNT II

## STATUTORY ATTORNEYS' FEES
## PURSUANT TO O.C.G.A. § 13-1-11
## ON THE LOAN DOCUMENTS

(Against Counterclaim Defendant Elie)

55.

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 54 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

56.

Pursuant to the Note and Guaranty, and O.C.G.A. § 13-1-11, Elie is liable to AMF for all costs and expenses incurred in the collection of the indebtedness, including, without limitation, attorneys' fees, in the amount of fifteen percent (15%) of the first $500.00 of principal and accrued interest owing on the Note and Guaranty, and ten percent (10%) of the remaining principal and accrued interest owing thereunder.

57.

Pursuant to O.C.G.A. § 13-1-11, and by certified correspondence dated September 4, 2015, September 17, 2015 and October 1, 2015 (Exhibits 12, 13 and 14), AMF notified, and hereby further notifies, Elie that the obligations specified in

SGR/13831677.2

the Note and Guaranty are in default and due and owing and that AMF Fargo intends to enforce the provisions of the Loan Documents in regards to attorneys' fees.

<p style="text-align:center">58.</p>

Unless all outstanding principal and interest due and owing under the Note and Guaranty is paid within ten (10) days of Elie's receipt of this Counterclaim and Third-Party Complaint, AMF will be entitled to recover from Elie as statutory attorneys' fees fifteen percent (15%) of the first $500.00 of principal and accrued interest owing on the Note and Guaranty, and ten percent (10%) of the remaining principal and accrued interest owed thereunder.

## COUNT III

## DECLARATORY JUDGMENT
## AS TO VALIDITY OF THE LOAN DOCUMENTS

(Against Counterclaim Defendant Elie and
Third-Party Defendants Gelin and Floyd)

<p style="text-align:center">59.</p>

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 58 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

<p style="text-align:center">–56–</p>

60.

The loan transaction and the Loan Documents at issue in this case relate to a commercial credit transaction, not a consumer credit transaction.

61.

On May 16, 2014, when Elie entered into the Loan Documents and the commercial loan transaction concerning the Property, she fully understood what she was doing and the nature, terms, significance and implications of the commercial loan transaction and the Loan Documents.

62.

Elie knowingly and voluntarily entered into the Loan Documents and the commercial loan transaction concerning the Property.  Indeed, Elie acknowledged in the Certificate that she had multiple sources for the funding of the loan and that she selected AMF for various business and economic reasons.

63.

The Loan Documents, including the Note, Guaranty and Security Deed are each valid and enforceable as between AMF and Elie, and Elie is responsible for paying the outstanding, unpaid indebtedness owed under the Note and Guaranty. Indeed, Elie expressly represented, warranted, acknowledged and covenanted in

–57–

the Extension that the Loan Documents, as modified by the Extension, are fully enforceable in accordance with their respective terms.

64.

The Security Deed constitutes a first-priority security interest and lien in, on and encumbering the Property, all rents from the Property, and all fixtures on the Property, and the Security Deed is valid and enforceable as between AMF and Elie, and AMF is entitled to conduct a nonjudicial foreclosure sale of the Property.

65.

The Security Deed is not subject to any interest, claim, right, encumbrance, or other matter claimed by Elie, Gelin, Floyd or any other person in possession of the Property.  Gelin and Floyd were aware of and participated in Elie's efforts to obtain the commercial loan, her actions to enter into the commercial loan and execute the Loan Documents, use of the loan proceeds to renovate and repair the Property, and payments pursuant to the Loan Documents.  Indeed, Gelin conveyed the Property to Elie so she could seek financing secured by the Property.  And, Floyd entered into a lease for the Property providing Elie with rental income from the Property.  Gelin, who had been a licensed mortgage broker, allowed her email address (mtgebkr@yahoo.com) to be used for Elie's Application for the private,

−58−

hard money loan.  Likewise, Gelin paid certain monthly interest payments on the commercial loan by writing checks from her checking account. Further, communications regarding the business loan were sent to and from Gelin's email address.

<div align="center">66.</div>

The Note, which is secured by the Security Deed, and the Guaranty are in default as set forth herein.

<div align="center">67.</div>

AMF is entitled to exercise any and all remedies available to it for such default, including the right of foreclosure upon the Property pursuant to the power of sale contained in the Security Deed.

<div align="center">68.</div>

However, Elie has asserted that the Loan Documents, including the Note, Guaranty and Security Deed, are void or voidable because they relate to a consumer credit transaction, and because she and her family, including Gelin and Floyd, reside in and possess the Property, and because AMF, White Glass, Crandall and/or Aclaime allegedly violated requirements relating to the purported consumer loan.

<div align="center">–59–</div>

69.

Accordingly, AMF shows that there is an actual controversy between the parties concerning the validity of the Loan Documents, including the Note, Guaranty and Security Deed, and whether AMF can exercise foreclosure rights under the power of sale provision of the Security Deed.  The parties are in a position of uncertainty and insecurity with respect to their rights and legal relations concerning the Property under the Security Deed and applicable law.

70.

Therefore, Counterclaim Plaintiff and Third-Party Plaintiff AMF is entitled to a declaratory judgment declaring:  (a) that the loan transaction and the Loan Documents at issue in this case relate to a commercial credit transaction, not a consumer credit transaction; (b) that the commercial transaction and the Loan Documents at issue in this case are not governed by or subject to any consumer loan laws or regulations, including, but not limited to, the Truth in Lending Act ("TILA"), the Georgia Fair Lending Act ("GFLA"), the Real Estate Settlement Procedures Act ("RESPA"), or the Fair Debt Collection Practices Act ("FDCPA"); (c) that AMF, White Glass, Crandall, and Aclaime, did not violate any consumer loan laws or regulations, including, but not limited to, TILA, GFLA, RESPA or

-60-

FDCPA; (d) that Elie knowingly and voluntarily entered into the Loan Documents and the commercial loan transaction concerning the Property; (e) that Gelin and Floyd knew about the commercial loan and participated in and assisted Elie in obtaining the commercial loan and making payments on the commercial loan; (f) that the Note, Guaranty, Security Deed and other Loan Documents are valid and enforceable; (g) that the Security Deed is a valid security interest occupying the first-priority lien position on the Property, all rents from the Property, and all fixtures on the Property; (h) that the Security Deed is not subject to any interest, claim, right, encumbrance, or other matter claimed by Elie, Gelin, Floyd or any other person in possession of the Property; and (i) that the Note and Guaranty are in default, and that AMF is entitled to exercise any and all remedies available to it for such default, including the right of foreclosure upon the Property pursuant to the power of sale contained in the Security Deed.

## COUNT IV

## DECLARATORY JUDGMENT AS TO
## RATIFICATION AND FAILURE TO TENDER

(Against Counterclaim Defendant Elie and
Third-Party Defendants Gelin and Floyd)

71.

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 70 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

72.

As set forth previously herein, Elie has asserted that the Loan Documents, including the Note, Guaranty and Security Deed, are void or voidable because they relate to a consumer credit transaction, and because she and her family, including Gelin and Floyd, reside in the Property, and because AMF, White Glass, Crandall and/or Aclaime allegedly violated requirements relating to the purported consumer loan.

73.

However, loan funds from AMF in the amount of $471,389.13 were disbursed to Elie on May 19, 2014, pursuant to the terms of the Loan Documents and the Settlement Statement.

SGR/13831677.2

74.

The loan proceeds disbursed pursuant to the terms of the Loan Documents and Settlement Statement and received by Elie were received, accepted and used for the benefit of Elie, Gelin, and Floyd, and the Property, in which they all claim to reside.

75.

Elie, Gelin and Floyd knowingly consented to, received and accepted the benefits of the Loan Documents, and Elie, Gelin and Floyd have not tendered or returned said benefits to AMF.  Accordingly, Elie, Gelin and Floyd have ratified the commercial loan transaction and the related Note, Guaranty, Security Deed and other Loan Documents.

76.

Elie, Gelin and Floyd have caused uncertainty and insecurity to AMF regarding its rights and status pursuant to the Note, Guaranty and the Security Deed, including its foreclosure rights under the power of sale provision of the Security Deed.

77.

Accordingly, AMF shows that there is an actual controversy between the parties concerning Elie, Gelin and Floyd's ratification of the Loan Documents,

SGR/13831677.2

including the Note, Guaranty and Security Deed,  and whether AMF can exercise foreclosure rights under the power of sale provision of the Security Deed.  The parties are in a position of uncertainty and insecurity with respect to their rights and legal relations concerning the Property under the Security Deed and applicable law.

<p style="text-align:center">78.</p>

Therefore, Counterclaim Plaintiff and Third-Party Plaintiff AMF is entitled to a declaratory judgment declaring:  (a) that Elie, Gelin and Floyd received and accepted benefits arising from the Loan Documents, including benefits to the Property in which they all claim to reside, and they thereby ratified the Loan Documents; (b) that Elie, Gelin and Floyd did not tender or return the benefits of the Loan Documents back to AMF; (c) that, as a result of Elie, Gelin and Floyd's ratification, the Note, Guaranty, Security Deed and other Loan Documents are valid and enforceable and not void or voidable; (d) that the Security Deed occupies the first-priority lien position on the Property, all rents from the Property, and all fixtures on the Property; (e) that the Security Deed is not subject to any interest, claim, right, encumbrance, or other matter claimed by Elie, Gelin or Floyd or any other person in possession of the Property; (f) that the Loan Documents are in

<p style="text-align:center">–64–</p>

default; and (g) that AMF is entitled to exercise any and all remedies available to it under the Loan Documents for such default, including the right of foreclosure upon the Property under the power of sale contained in the Security Deed.

## COUNT V

## INJUNCTIVE RELIEF

(Against Counterclaim Defendant Elie and
Third-Party Defendants Gelin and Floyd)

79.

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 78 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

80.

As a result of the wrongful acts of Elie, Gelin and Floyd in misleading AMF as to the purpose of the loan, in inducing AMF to fund the a loan which it reasonably believed to be commercial in nature, and in now attempting to stop AMF from exercising its valid foreclosure rights under the Security Deed, AMF has suffered irreparable injury and damage and will continue to do so in the future, the exact extent, nature and amount of such injury and potential injury being impossible to ascertain at this time.

SGR/13831677.2

81.

Counterclaim Plaintiff and Third Plaintiff AMF is without an adequate remedy at law and, unless enjoined by the Court, Elie, Gelin and Floyd will continue to cause irreparable injury and damage to AMF through the wrongful acts complained of herein.

82.

AMF has a substantial likelihood of success in the merits of the claims alleged in this Counterclaim and Third-Party Complaint.

83.

AMF will be irreparably harmed unless Elie, Gelin and Floyd are enjoined temporarily, preliminarily and permanently from such wrongful conduct.

84.

Any burden to be imposed upon Elie, Gelin and Floyd by the grant of injunctive relief is far outweighed by the harm to be suffered by AMF arising from the wrongful actions and conduct of Elie, Gelin and Floyd.  For example, Elie, Gelin and Floyd will not be harmed by simply allowing AMF to do that which the valid Security Deed allows AMF to do, especially given the fact that Elie, Gelin and Floyd all conspired to induce AMF to fund the loan secured by the Property

and to enter into the Loan Documents, including the Security Deed, all as set forth
more fully herein.

<div align="center">85.</div>

Accordingly, AMF is entitled to an order in equity enjoining Elie, Gelin and
Floyd, and all other persons acting in concert with Elie, Gelin and Floyd,
temporarily, preliminarily and permanently from interfering with AMF's right to
conduct a foreclosure sale of the Property under the Security Deed's power of sale
provision, and also affirmatively requiring Elie, Gelin and Floyd to protect,
preserve and not waste the Property, and to vacate and surrender the Property in
good condition immediately following completion of AMF's foreclosure sale.

<div align="center">

## **COUNT VI**

## **FRAUD**

(Against Counterclaim Defendant Elie
and Third-Party Defendants Gelin and Floyd)

86.
</div>

AMF incorporates herein by reference the allegations contained in
paragraphs 1 through 85 of its Counterclaim and Third-Party Complaint, as if fully
set forth and restated herein.

<div align="center">−67−</div>

87.

In the event that Elie is correct that the loan should be treated as a consumer transaction governed by consumer laws and regulations and that AMF is liable to Elie for damages and/or that the loan is void or voidable (all of which is disputed), then Elie, Gelin and Floyd fraudulently induced AMF to fund the loan and enter into the Loan Documents and thereafter continued to defraud AMF by making and not correcting certain false representations and warranties in the Application, as supplemented, and the Loan Documents, as extended, including the following:

a.   Elie misrepresented that her residence address was 5108 Ashford Gables Drive, Dunwoody/Atlanta, Georgia 30330.

b.   Elie misrepresented that the Property being used as security for the loan is investment property, and is not the borrower's primary residence.

c.   Elie misrepresented that all loan funds will only be used for investment business reasons, and that none of the loan funds will be used for consumer or personal reasons.

d.   Elie misrepresented that she was borrowing the funds for investment and commercial purposes, and not for personal, consumer, family or

–68–

SGR/13831677.2

household purposes.

e.      Elie misrepresented that she is a professional real estate investor.

f.      Elie misrepresented that the Property was leased to Floyd and that she received monthly rent of $4,200.00.

g.      Elie misrepresented that she has not at any time, will not and has no intention of occupying the Property as a primary or secondary personal residence.

h.      Elie misrepresented that the loan is for commercial purposes and that she has not and shall not occupy, establish, and use the Property as her principal residence at any time.

i.      Elie misrepresented that financing is commercial and being used solely for the purpose of acquiring or refinancing of real property.

j.      Elie misrepresented that she was going to use the loan proceeds to complete repairs to the Property, to purchase a condo to keep for future investment, to create an online swimwear business, and invest in other real estate.

k.      Elie misrepresented that she obtained the assistance of counsel.

l.      Elie misrepresented that the Loan Documents, as modified, are fully

enforceable in accordance with their respective terms.

88.

Despite Elie making the above representations and warranties, and despite Gelin and Floyd having knowingly participated in the scheme to convince AMF that the loan was for a commercial transaction secured by investment property that was leased, Elie, Gelin and Floyd now claim that they the loan was a consumer transaction and that they all live in the Property as their family home.

89.

Elie, with the knowledge and assistance of Gelin and Floyd, made the above false representations and warranties to AMF and failed to correct them with knowledge of their falsity and/or reckless disregard for their truth and with the intent that AMF rely on the false representations and warranties to fund the loan.

90.

AMF reasonably relied, to its detriment, upon Elie, Gelin, and Floyd's false representations and/or concealments, incurring substantial costs in the course of that reliance, with the reasonable expectation that Elie would perform all of her contractual obligations.

–70–

91.

AMF would not have considered funding the loan if the representations regarding the commercial nature of the loan had not been made by Elie and supported by the conduct and actions of Gelin and Floyd.   Indeed, such representations were a material inducement to AMF's decision to make the loan and enter into the Loan Documents.

92.

Elie's false representations, and Gelin and Floyd's participation in the scheme, have directly and proximately caused AMF substantial damages, which it is entitled to recover, including the principal amount loaned to Elie and substantial costs and fees, including reasonable attorneys' fees, incurred by AMF.  Elie, Gelin and Floyd are liable to AMF for such damages and AMF is entitled to recover such damages from Elie, Gelin and Floyd, jointly and severally.

## COUNT VII

## ATTORNEYS' FEES AND LITIGATION EXPENSES

(Against Counterclaim Defendant Elie
and Third-Party Defendants Gelin and Floyd)

93.

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 92 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

94.

Pursuant to O.G.A. § 13-6-11, Counterclaim Defendant Elie and Third-Party Defendants Gelin and Floyd are liable for, and AMF is entitled to recover from Elie, Gelin and Floyd, jointly and severally, its reasonable litigation expenses, including reasonable attorneys' fees, incurred in connection with this action, because Elie, Gelin and Floyd have acted in bad faith, been stubbornly litigious, and caused AMF unnecessary trouble and expense.

SGR/13831677.2

## COUNT VIII

## PUNITIVE DAMAGES

(Against Counterclaim Defendant Elie
and Third-Party Defendants Gelin and Floyd)

95.

AMF incorporates herein by reference the allegations contained in paragraphs 1 through 94 of its Counterclaim and Third-Party Complaint, as if fully set forth and restated herein.

96.

Based upon clear and convincing evidence of the foregoing matters and such other relevant matters as will be adduced at trial, which show that Elie, Gelin and Floyd engaged in willful misconduct, acted with malice, fraud and in a wanton manner, engaged in oppression, and/or displayed that entire want of care that would raise the presumption of conscious indifference to the consequences of their actions, AMF respectfully requests that the trier of fact impose punitive damages to punish and/or penalize Elie, Gelin and Floyd for their conduct and/or deter them and/or other similarly situated actors from engaging in like conduct in the future. See O.C.G.A § 51-12-5.1.  AMF is entitled to recover such punitive damages from Elie, Gelin and Floyd, jointly and severally.

–73–

**WHEREFORE,** having fully stated its Counterclaim and Third-Party Complaint against Elie, Gelin and Floyd, AMF respectfully prays for judgment against Elie or Elie, Gelin and Floyd, jointly and severally, on Counts I, II, III, IV, V, VI, VII and VIII of its Counterclaim and Third-Party Complaint, for the damages and relief specified herein, and for such other and further relief as the Court deems just and proper, as well as a trial by jury on all issues so triable.

This the 6th day of May, 2016.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

/s/ Marcia M. Ernst_____
Marcia M. Ernst
Georgia Bar No. 249958
Benjamin E. Reed
Georgia Bar No. 719210

Suite 3100 Promenade
1230 Peachtree Street, NE
Atlanta, Georgia 30309-3592
Telephone: (404) 815-3673
Facsimile:  (404) 685-6973
Email:  mernst@sgrlaw.com
Email:  breed@sgrlaw.com

*Attorneys for AMF Holdings, LLC,*
*White Glass Lending, LLC,*
*Keith Crandall, and*
*Aclaime Credit Partners, LLC*

−74−

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a true and correct copy of the within and foregoing DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT, AND AMF'S COUNTERCLAIM AGAINST LAUREYNN M. ELIE AND THIRD-PARTY COMPLAINT AGAINST MARIE C. GELIN AND PRENTINCE L. FLOYD to be served upon counsel for Plaintiff via the Clerk of Court by using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record for the parties:

> Krystal M. Moore
> P.O. Box 55012
> Atlanta, Georgia 30308
> krystal@attorneymoore.com

This 6th day of May, 2016.

By: _/s/ Marcia M. Ernst_____
Marcia M. Ernst
Georgia Bar No.: 249958

–75–

SGR/13831677.2